| | |
|---|---|
| HENRY H. BETTIS, III, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MADISON COUNTY SHERIFF'S )<br>DEPARTMENT, et al., )<br>)<br>Defendants. )<br>) | ORDER |

**THIS MATTER** comes before the Court upon Plaintiff's Complaint and Amended Complaint pursuant to 28 U.S.C. § 1983, (Doc. Nos. 1; 6), and Defendants' Motion for Summary Judgment, (Doc. No. 26). For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED.

### I. FACTUAL AND PROCEDURAL HISTORY[1]

On March 23, 2010, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 against the Madison County Sheriff's Department ("Sheriff's Department") and Madison County Sheriff James "Buddy" Harwood ("Harwood") alleging that his legal mail was opened and read outside his presence in violation of the First Amendment. (Doc. No. 1). On March 30, 2010, Plaintiff sent a letter to the Court alleging that Harwood had transferred him to the Rutherford County Jail in retaliation for his having filed a § 1983 action. (Doc. No. 6). The Court construed the letter as a motion to amend. (Doc. No. 18). Summonses were issued, and Defendants were served on April 1, 2010. (Doc. Nos. 11; 12).

---

[1] The facts stated herein are largely uncontested. However, because the Court is ruling on Defendants' motion for summary judgment, where there are material factual disputes, they have been resolved in the light most favorable to Plaintiff.

Defendants filed a Motion for Summary Judgment, asserting that Plaintiff's Complaint failed to state a claim upon which relief may be granted and, in the alternative, that they are entitled to qualified immunity. (Doc. Nos. 26; 26-1). In support of their Motion, Defendants attached affidavits of Harwood and William Leslie, who represented Plaintiff in criminal proceedings in Madison County. (Doc. Nos. 26-2; 26-3).

On September 29, 2011, the Court issued an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) advising Plaintiff of the heavy burden that he carries in responding to a Motion for Summary Judgment and directing him to respond within thirty (30) days. (Doc. No. 27). Plaintiff's response was due October 31, 2011. See Fed. R. Civ. P. 6(a)(1). Plaintiff has not filed a response to Defendants' Motion for Summary Judgment.

A. Legal Correspondence

On October 12, 2009, while he was a pre-trial detainee in the custody of the Madison County Sheriff's Department, Plaintiff gave a sealed envelope marked "Legal" and addressed to the President of the United States to Harwood so that it could be mailed after sufficient postage had been affixed. (Doc. No. 1 at 5). Plaintiff alleges that rather than mailing the envelope, Harwood opened it and tampered with its contents. (Id.). Plaintiff asserts that he discovered the tampering when his attorney returned the envelope to him during a visit later that day. (Id.).

Plaintiff gave three similarly-labeled and addressed envelopes to jail staff on November 29, 2009, March 18, 2010, and March 19, 2010, respectively, so that proper postage could be affixed and the envelopes could be mailed. (Id.). He contends that because the October 12, 2009 letter was not mailed, the latter three also were not mailed. (Id.). Plaintiff also received correspondence from the Clerk of the United States District Court in Austin, Texas on March 18, 2010 that had been opened outside his presence. (Id.).

B.  Retaliatory Transfer

Plaintiff was transferred to the Rutherford County Jail on March 26, 2010. (Doc. No. 6). He claims that the transfer was in retaliation for his having filed the instant civil rights suit against the Defendants. (Id.).

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 & n .3 (quoting Rule 56(e) (1963)). The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the Record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct.

2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**III. DISCUSSION**

A case filed under 42 U.S.C. § 1983 requires a deprivation of a right secured by federal law by a person acting under color of state law. Section 1983 applies to violations of federal constitutional rights, as well as certain limited federal statutory rights. See Maine v. Thibotout, 448 U.S. 1 (1980); see also Gonzaga University v. Doe, 536 U.S. 273, 283 (2002) (holding that a right must be "unambiguously conferred" by a statute to support a Section 1983 claim).

A. Defendant Madison County Sheriff's Department

Defendant Madison County Sheriff's Office is not a legal entity capable of being sued. See Efird v. Riley, 342 F. Supp. 2d 413, 419-20 (M.D.N.C. 2004) (citing Avery v. Burke, 660 F.2d 111, 113–14 (4th Cir. 1981)) ("State law dictates whether a governmental agency has the capacity to be sued in federal court"). There is no statute in North Carolina that authorizes suit against a county's sheriff's department. Parker v. Bladen Cnty., 583 F. Supp. 2d 736 (E.D.N.C. 2008) (North Carolina statute establishes that "a county is a legal entity which may be sued," but "there is no corresponding statute authorizing suit against a North Carolina county's sheriff's department"). Plaintiff fails to present any authority indicating that the Madison County Sheriff's Office is an entity with the capacity to be sued. Therefore, the Court finds that the Madison County Sheriff's Department is not amenable to suit under § 1983, and Plaintiff's Complaint against it must be dismissed. See 28 U.S.C. § 1915(e)(2)(B).

B. Inspection of Outgoing and Incoming Mail

While prisoners may not lose all of their constitutional rights upon conviction and incarceration, these rights may be curtailed in furtherance of the legitimate goals or objectives of the correctional institution. Hudson v. Palmer, 468 U.S. 517, 524 (1984) (citing Bell v. Wolfish,

4

441 U.S. 520, 545 (1975)).  A prisoner's constitutional rights may be impinged by a prison regulation, however, only if the regulation is "reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  When evaluating the constitutionality of prison regulations, courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgement are needed to preserve internal order and discipline and to maintain institutional security."  Bell, 441 U.S. at 547 (citations omitted).

In Procunier v. Martinez, the Supreme Court considered a challenge to the California prisons' mail censorship policies and held that restrictions on outgoing prisoner mail are justified only if the restriction in question: (1) "further[s] an important or substantial governmental interest unrelated to the suppression of expression;" and (2) is "no greater than . . . necessary" to protect the governmental interest involved.  416 U.S. 396, 413 (1974), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989); see also Abbott, 490 U.S. at 413–14 (limiting Martinez to prison policies affecting outgoing prisoner mail).  The Court noted that inmate correspondence, whether incoming or outgoing, may legitimately be rejected for including "material which might violate postal regulations, i.e., threats, blackmail, contraband or which indicate plots of escape;" "discussion of discussions of criminal activities;" and certain business transactions.  Martinez, 416 U.S. at 414 n.14.  Furthermore, prison officials are not required to show with certainty that a particular correspondence would have adverse consequences because officials are given latitude in anticipating the probable consequences of allowing certain speech in and out of a prison environment.  Id. at 414.

5

Regulations affecting incoming prison mail are measured under the Turner standard.[2] Abbott, 490 U.S. at 413. Such regulations are valid if reasonably related to legitimate penological interests, giving prison officials considerable deference in regulating the delicate balance between prison order and demands of "outsiders" who seek to enter the prison environment. Id. at 404–07.

The standard is no different for incoming legal mail. See Wolff v. McDonnell, 418 U.S. 539 (1974) (rejecting state prisoner's claim that prison officials could not open mail from his attorney to check for contraband); United States v. Stotts, 925 F.2d 83, 87-90 (4th Cir. 1991) (concluding that the Bureau of Prisons' requirements that a legal sender be specifically identified and that confidential mail be marked as such were "reasonably related to legitimate penological interests" under the Turner standard). Moreover, any claim that interference with a plaintiff's incoming legal mail infringed upon his right of access to the courts requires a showing of "actual injury to the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." O'Dell v. Netherland, 112 F.3d 773, 776 (4th Cir. 1997) (internal quotations omitted).

1. Outgoing Mail

The Madison County Jail has a policy of opening any outgoing inmate mail that appears to be of a suspicious nature or is being mailed to an address that raises safety concerns. (Doc. No. 26-2: Aff. of James "Buddy" Harwood at ¶ 8). Pursuant to that policy, inmate mail addressed to the President of the United States is subject to being opened and examined prior to being placed in the mail because of its potential for containing threatening correspondence.

---

[2]Turner v. Safley, 482 U.S. 78, 89 (1987).

6

Case 1:10-cv-00069-RJC   Document 28   Filed 01/19/12   Page 6 of 12

(Id.).

Notwithstanding the policy, it does not appear from the record before this Court that any of Plaintiff's outgoing mail to the President was opened or inspected by jail personnel. Defendant Harwood accepted the October 12, 2009 letter from Plaintiff, but prior to his doing anything with it, Plaintiff's defense attorney, William Leslie, appeared at the Madison County Jail to see Plaintiff. (Doc. No. 26-2: Harwood Aff. at ¶ 5; Doc. No. 26-3: Aff. of William Leslie at ¶ 4). Harwood gave the correspondence, sealed in its envelope, to Plaintiff's attorney and explained that Plaintiff had given it to him that day for mailing. (Doc. No. 26-2: Harwood Aff. at ¶ 5; Doc. No. 26-3: Leslie Aff. at ¶ 4). Harwood denies having opened the envelope prior to giving it to Mr. Leslie and disavows any independent knowledge of what happened to the correspondence after he turned it over to Mr. Leslie. (Doc. No. 26-2: Harwood Aff. at ¶ 6).

Mr. Leslie accepted the envelope so that he could review its contents and discuss its implications with Plaintiff prior to it being mailed. (Doc. No. 26-3: Leslie Aff. at ¶ 4). When he accepted the correspondence, it was in a sealed envelope that had not been opened, and which showed no evidence of tampering. (Id. ¶ 5). Thereafter, Mr. Leslie opened the envelope outside the presence of any Madison County Sheriff's Department officers. (Id.). He then returned the correspondence to Plaintiff. (Doc. No. 1 at 5).

With respect to Plaintiff's other three letters addressed to the President, Harwood states that either he or a member of his staff affixed sufficient postage and deposited each with the United States Postal Service for mailing. (Doc. No. 26-2: Harwood Aff. at ¶ 7). Plaintiff has provided no evidence to contradict Harwood's factual assertions; he merely speculates that the letters were never mailed. (Doc. No. 1 at 5). Although Harwood does not indicate whether any of the correspondence was first opened and inspected, such inspection would not have violated

7

Plaintiff's First Amendment rights.  See Altizer v. Deeds, 191 F.3d 540, 548 (4th Cir. 1999) (holding that the opening and inspecting of prisoners' outgoing mail is reasonably related to legitimate penological interests and is constitutional).  Furthermore, the fact that Plaintiff wrote "legal" on his correspondence to the President does not indicate a violation of his Sixth Amendment rights as he does not allege that he was communicating with his attorney about any pending criminal matter.  See Wolff, 418 U.S. at 576 (noting that the Sixth Amendment's reach extended "only to protect the attorney-client relationship from intrusion in the criminal setting").

Plaintiff has failed to show that this claim has a basis in either law or fact.  As such, it is subject to dismissal as frivolous, 28 U.S.C. § 1915(e)(2)(B); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) (explaining that a complaint is frivolous "where it lacks an arguable basis either in law or in fact"), and Defendants are entitled to summary judgment as a matter of law.

2.  Incoming Mail

Plaintiff asserts that on March 18, 2010, he "received an envelope from the Clerk of the U.S. District Court, Austin, Texas.  It had been opened by the staff without [him] present.  A federal requirement for all legal mail.  This is not the first incident of that nature." (Doc. No. 1 at 5).  Plaintiff does not state, however, when or under what circumstances staff allegedly opened other incoming legal mail.

The Madison County Jail has a policy of opening all incoming mail addressed to inmates to ensure that it does not contain contraband.  (Doc. No. 26-2: Harwood Aff. at ¶ 9).  In his affidavit, Mr. Harwood does not indicate whether the policy requires that incoming legal mail be opened in the presence of the inmate.  Mr. Harwood disavows any knowledge of the opening or inspection of the correspondence from the U.S. District Court in Texas but asserts that if it did occur, it was in furtherance of the aforementioned policy.  (Id.).  Plaintiff did not respond to

8

Case 1:10-cv-00069-RJC   Document 28   Filed 01/19/12   Page 8 of 12

Defendants' Motion for Summary Judgment or offer any evidence to contradict these facts.

Accepting as true Plaintiff's allegation that the correspondence from the District Court in Texas was legal mail[3] and that it was opened and inspected outside his presence, he, nevertheless, fails to state a claim for relief. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (a few isolated instances of improper handling of inmate's mail, such as opening it out of his presence, did not raise a claim of constitutional magnitude).

Plaintiff has not alleged that he suffered any actual injury as a result of his correspondence being opened. See, e.g. O'Dell, 112 F.3d at 776 (Any claim that a plaintiff's right of access to the courts was violated requires a showing of "actual injury to the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."); White v. White, 886 F.2d 721, 723 (4th Cir. 1989) ("To state a claim that a delay in receiving legal mail violated an inmate's constitutional rights, the prisoner must allege facts showing that the delay interfered with his right of access to the courts."). In fact, he does not even allege that the correspondence was read by jail staff; he merely observes that it had been opened. A single incident of jail staff opening incoming legal mail outside Plaintiff's presence, without an accompanying allegation of harm, does not state a claim upon which relief may be granted. See Buie, 717 F.2d at 926.

---

[3] The Court notes that Plaintiff has filed two civil rights complaints pursuant to § 1983 in the United States District Court for the Western District of Texas, which has a division in Austin. The first, filed in 2009, was dismissed the same year. Bettis v. Travis Cnty. Jail, et al., 1:09-cv-00416 (W.D. Tex. June 22, 2009) ECF No. 9. The docket in that case does not reflect any action by the court between June 22, 2009 and March 26, 2010. Id. at ECF No. 11. It, therefore, does not appear that the letter received by Plaintiff on March 18, 2010 related to that legal matter. The second complaint was filed on March 24, 2010. Bettis v. Williamson Cnty. Sheriff's Dep't, 1:10-cv-00199-LY (W.D. Tex. July 27, 2010) ECF No. 1. The Court was unable to find any criminal or bankruptcy cases in the Western District of Texas listing Plaintiff as a party. PACER Case Locator, http://pcl.uscourts.gov/search (last visited Jan. 12, 2012).

C. <u>Retaliatory Transfer</u>

To succeed on his retaliatory transfer claim, Plaintiff must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994) (citations omitted). Simply alleging retaliation is not sufficient to state a claim for relief. On the contrary, Plaintiff must come forward with specific evidence "that but for the retaliatory motive, the complained of incident ... would not have occurred." <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir. 1995).

To state a First Amendment § 1983 retaliation claim, a plaintiff must establish three elements: (1) the plaintiff's right to speak was protected; (2) the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal relationship existed between the plaintiff's speech and the defendant's retaliatory action. <u>Suarez Corp. Industries v. McGraw</u>, 202 F.3d 676, 685-86 (4th Cir. 2000) (citations omitted). The Court will assume the existence of the first element.

Turning to the second element, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." <u>Constantine v. Rectors and Visitors of George Mason Univ</u>., 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks and citations omitted). Generally, transfer to the general population of another prison alone is not an adverse action upon which a retaliation claim may be based. <u>See</u> <u>Smith v. Yarrow</u>, 78 F. App'x 529, 543 (6th Cir. 2003) (unpublished) ("[T]ransfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights.") (internal quotation marks and citations omitted)). Here, Plaintiff has

10

provided no evidence that his transfer to Rutherford County had any foreseeable adverse affect on him.

Even if the Court assumed that the transfer to Rutherford County was an adverse action that would likely deter a person of ordinary firmness from the future exercise of his First Amendment rights, Constantine., 411 F.3d at 500, Plaintiff has failed to show a causal connection between the filing of his civil rights Complaint and the transfer, Suarez Corp. Industries, 202 F.3d at 686. Plaintiff states that Hardwood ordered his transfer. (Doc. No. 6 at 2). In his affidavit, Harwood avers that he did not learn of the lawsuit until April 1, 2010, five days after Plaintiff was transferred. (Doc. No. 26-2: Harwood Aff. at ¶¶ 4, 10).

Plaintiff has not identified any evidence that contradicts or otherwise casts doubt upon the credibility of Harwood's statement. He, therefore, has failed to support his retaliatory transfer claim, and Harwood is entitled to judgment as a matter of law.

## IV. CONCLUSION

Plaintiff has not set forth any facts in response to Defendants' summary judgment motion that could lead a rational trier of fact grant him relief. See Ricci, 129 S.Ct. at 2677. Consequently, there is no genuine issue for trial. See id. Defendants, therefore, are entitled to summary judgment as a matter of law.

## V. ORDER

**IT IS, THEREFORE ORDERED** that Defendants' Motion for Summary Judgment, (Doc. No. 26), is **GRANTED**.

11

Signed: January 19, 2012

*[signature]*

Robert J. Conrad, Jr.
Chief United States District Judge